*Fairfield,*
June,
1820.

Hall
*v.*
Hall.

HALL *against* HALL:

#### IN ERROR.

Referees of a personal action pending in court, appointed pursuant to the statute, and required, by an order of the court, to return their award to the next term, cannot, after the expiration of the time thus limited, make an award, without a new appointment, founded on the act of each of the parties and of the court.

THIS was an action on the case, complaining of an injury done to the plaintiff, by the defendant's dog accustomed to bite, brought to the county court, *November* term, 1818, and continued to *February* term, 1819. At the latter term, the cause, by mutual agreement of the parties, was referred to referees, pursuant to the statute. (*a*) Each of the parties chose one of the referees, and the court appointed a third; of which the clerk made an entry in his records. The following order of the court was thereupon passed : " The above referees are to hear the parties, with their evidence, in this cause, and their award make of their doings to the county court to be holden at *Fairfield* in *April* term next." No report being made, by the referees, at the *April* term, the plaintiff moved for their re-appointment; to which the defendant objected, and claimed a trial of the cause to the jury. The court overruled the defendant's objection, and passed the following order : " The referees chosen and appointed, at the last term, not having made any award, or return of their doings, to the present term, in this cause ; on motion, it is now considered by this court, that said referees hear the parties, with their evidence, make their award, and return the same to the term of this court to be holden at *Danbury*, in *November* next." At the *November* term, the referees made their report, awarding to the plaintiff 175 dollars damages, and costs. The defendant made a written remonstrance against the acceptance of the report, on the same ground on which he had objected to the re-appointment of the referees ; but the court adjudged it insufficient, accepted the report, and rendered judgment for the plaintiff to recover the sum awarded. The defendant brought a writ of error in the superior court, who affirmed the

(*a*) *Tit.* 12. *s.* 3.

judgment of the county court.   To obtain a reversal of those judgments, the present writ of error was brought.

*N. Smith* and *Bissell*, for the plaintiff in error, contended, That the power of referees, appointed under the statute, must, in all cases, be founded on the concurrent act of the parties and of the court ; that in this case, neither the consent of the parties, nor the act of the court, extended beyond the next term after the appointment ; that the power of the referees necessarily expired with the time thus limited for their exercise ; and that that power could not be revived, otherwise than by a new appointment in conformity to the provisions of the statute.   The court could not *continue* a power, which had ceased to exist.   Some act *communicating* the power was necessary for its subsequent existence ; but it could not be communicated, without the consent, and in opposition to the will, of the parties.   This ground is fortified, by decisions in analogous cases.   *Brower* v. *Kingsley*, 1 *Johns. Ca.* 334.   *Mott* v. *Anthony*, 5 *Mass. Rep.* 489.

*Sherman* and *E. Swift*, for the defendant in error.   The statute required nothing more from the parties, and they did nothing more, than to agree to the reference, and select two of the referees.   This being done, the subsequent proceedings were exclusively under the controul of the court.   The parties had no right to act, nor did they attempt to act, in limiting a time within which the referees should exercise their functions. The court alone made the original order relative to the report of the referees ; and they alone had the power to modify that order, or to *enlarge* the time, which they had themselves prescribed.   No new appointment of the referees was necessary.   The reference having become a rule of court, it was not in the power of either party to revoke it.

HOSMER, Ch. J.   The appointment of the referees is the act of the court, founded on the consent of the parties.   If the time limited for the return of their award, has expired, there must be a new appointment of them, and not a mere extension of the time within which they may make such report.   To continue the appointment, which is a repetition of the same act, requires the same consent of the parties, as to originate it.

*Fairfield,*
*June,*
*1820.*

Hall
*v.*
Hall.

This is a matter of practice, long and uniformly settled, in this state. It results, as a consequence, that the appointment of the referees, by the court, without the consent of the parties, was illegal.

If the court were now to establish a rule, for the first time, I do not know that I would advise a deviation from the one hitherto adopted. The inducement to refer may arise from the hope of a speedy decision, and the certain knowledge, if the award is not made within the time limited, that the cause will be heard by the jury. If the court, from time to time, may enlarge the rule, against the desire of the parties, I should apprehend, that on references it would have an unfriendly effect.

CHAPMAN, J. was of the same opinion.

BRISTOL, J. Had the county court power, without the consent of the defendant, to direct the referees to report at a succeeding term? Or, had the defendant, as the referees had not reported at the term of the court when they were first directed, a right to insist upon trying the cause, as though no referees had never been appointed?

By the statute, referees are to be chosen, one by each party, and the court may appoint the third. To complete the appointment of referees, each party and the court must perform the several parts, which the law has assigned them. If the county court, therefore, has usurped a power, which cannot be exercised but by both parties and the court, the judgment of the supreme court ought to be reversed.

The appointment of referees, however, it is agreed, was made, in the first instance, in conformity to the statute; each party appointed *one*, and without annexing any *condition* to their choice, or providing that the powers of the referees should cease, if they did not report at the then next term of the county court. The parties, having the power to appoint referees, might, perhaps, limit the time within which their powers should be exercised; and if they did not report within that time, their authority would cease.

There was, however, no such *limitation*, in this case, contained in the act of their appointment; nor any time limited by the parties, within which their report should be made : and

it being a reference by rule of court, it is agreed, that it could not be revoked, at the pleasure of either party.

Although the *authority* of referees is derived from the parties and the court, the *time*, within which they shall exercise that authority, is regulated by the *court alone.* The cause continues in court, notwithstanding the reference : and it is not only in the *power,* but it is the *duty* of the court, to prevent unnecessary delay of referees, by fixing the time when they shall make report ; and also, to *enlarge* that time, for reasonable cause, in order to prevent the mischief of sudden and precipitate decisions.

Hence, the parties, in the present case, did nothing more than to choose the referees : and this act is attested, by a distinct entry of the clerk. After the parties had thus delegated to the referees, unconditional and irrevocable authority to decide the cause, the court, by an *act of their own*, evidenced by a distinct entry of the clerk, direct the report to be made at the "next term." Might not the court, when they entered this rule, have further directed, that instaed of reporting to the next term, if either party had reasonable cause for delay, they might report either to that, or any succeeding, term of the court ? If the court had then power to do this, and without the consent of the parties, had they not the same power, at the next court, when they found the cause still on the docket, and that the referees had not acted on the subject ? If they had not, what has taken place to deprive them of this authority ?

As nothing is found in the act of the parties, and the court, appointing referees, attested by the first entry of the clerk, limiting the duration of their authority ; neither can such an inference be fairly derived from the second entry of the clerk, directing them to report at the "next term." It is material to consider the object and use of the latter rule ; and it will be found not to militate against the power exercised by the county court.

The county court, in directing a report at the next term, had no idea that they were abridging the referees of any useful authority ; much less, can they be considered as denying the power vested by the unconditional choice of the parties and the court. The court may, indeed, discharge a rule of reference, for reasonable cause ; such as misconduct, or gross partiality in the referees ; or permit a plaintiff to discontinue

*Fairfield,*
June,
1820.

Hall
*v.*
Hall.

a cause already referred, at their discretion. This, like the time when referees shall report, is always under the controul of the court, and the power will be exercised, when it is for the furtherance of justice. The act of the court, in directing a report at the next term, was not intended to revive the authority of the court over the cause, provided the referees did not comply with the order ; for a court can always discharge the rule of reference, and proceed to trial, as though the cause had not been referred.

If, then, the rule of court directing a report at the next term, did not limit the power of the referees, or put an end to the authority confided to them, for what purpose was it made ? I answer ; the reference was undoubtedly complete without it ; and nothing further was necessary to be done. The referees had been appointed in the manner prescribed by the statute ; and the same law points out their duties. A report made at the next term, or any other term, of the court, would have been good, unless the rule of reference had been discharged previously to the report.

The rule that they should report at the next term, was made to prevent unreasonable delay ; to inform the referees that they need not proceed, call out the parties, and report *immediately ;* and to subject the referees to punishment for *contempt,* if they wantonly delayed their report beyond the time limited.

In *Pennsylvania,* where the law respecting awards is more familiar than in any other state, the last is considered the only reason of serious consequence in directing a report within a limited time. If the report is not made within the time limited, it will still be *accepted,* and is obligatory upon the parties. But the referees, if they do not perform their duty in season, may be censured for unnecessary delay, or punished for contempt.

The referees, in the present case, not having reported at the term when they were directed, either party might have applied to discharge the rule of reference altogether, or for an enlargement of time ; either application might have been granted for reasonable cause; and the application of the plaintiff, in the county court, was substantially to enlarge the time ; while the refusal of the defendant to consent to such enlargement, and his objections to that course, are to be regarded as a counter-application to discharge the rule of reference altogether. If the court had *power* to enlarge the time,

nothing appears to shew it was indiscreetly exercised; and if there did, it would make no difference on this writ of error.

Had the county court, under these circumstances, power to enlarge the time? This is the only question. It has been already shewn, that such a power must necessarily result from the other facts, and is conducive to the correct administration of justice; that the appointment of referees was absolute and unconditional, not dependent on the performance of their duty within a *limited* time; and that the subsequent direction to report at the next term neither *could*, nor was *intended* to limit or vary the *power* given to the referees; but to prevent delay, and subject the referees to process for contempt. It is agreed, that where a time is limited by the parties to a submission, within which the award shall be made, the award must be made within the time limited, or it will be void. But there is no analogy between that and the present case. In that case, the time is limited by the *parties*, and is intended to constitute a condition of the submission. In this case, the time is fixed by the court, who had no power to annex this condition to a submission already made, and who have done nothing, which, upon a fair construction, shews they ever intended to annex such a condition to the power given the referees. Had the parties themselves submitted to referees, upon condition they reported at the next term, and such a submission had been sanctioned by the court, an award, after that time, would probably be void, unless new life was given to the powers of the referees, by the agreement of both parties: but when the submission of the parties is without limitation, as to the *time* of the report, and the court alone direct when the report shall be made, this rule of court may be modified, and the time enlarged, upon the application of either party, without the consent of the other.

*Kyd*, in his treatise on *Awards*, (*p.* 96.) says, "that if the parties consent to have the time enlarged, the court will grant leave for the enlargement, as of course. When it is not suspected, by the party, who undertakes to make the application, that there will be any opposition, it is sufficient to give notice to him of his intention; and on affidavit of that notice, the court will grant the rule; at least, if the other party consent, by counsel, as is usually the case. But if any opposition be apprehended, the best way of proceeding for the party, who wishes to enlarge the time, will be to apply,

on an affidavit, stating the circumstances on which he conceives the time ought to be enlarged, for a rule on the other party, calling on him to shew cause why it should not: if the rule be ultimately granted, he must serve a copy of it on the arbitrator, &c."

The author is here speaking of a rule of proceeding, which he must frequently have witnessed in the course of practice, and about which he cannot be mistaken. It shews, conclusively, that the power of the arbitrators or referees had not ceased to exist: for if it had, it must be revived, by the same power which originally gave life to it, and the court could not, without the consent of both parties, prolong the time.

In *Pennsylvania,* it is not deemed essential that the time should be *enlarged,* by a rule of court; but the award is good, though made subsequent to the term when it was directed, although the time was never enlarged.

In the case of *Shaw* v. *Pearce,* 4 *Binn.* 485. it was decided, that a rule of reference directing a report to be made at the next term, makes it incumbent on the referees to report to the next term after the submission; but if the report is not then made, it may be made to any *succeeding* term, without any new appointment of the referees. And in the case itself, more than seven years had elapsed, after the rule of reference directing a report at the next term, before the report was actually made. And so fully is the authority to decide vested, by the parties, in the referees, that if an award is set aside for informality in the report, it may be sent back to the same referees, by the court, without consent of parties.

"A rule of reference," (says one of the Judges,) " is a rule of court, binding on the referees. They are bound to obey it, under pain of contempt. The *next term* is inserted to avoid delay; and if they will not report to that term, an application may be made for a rule to shew cause why an attachment should not issue against them. The *next term,* means the term after the submission. If the award is not made then, it may be made to any term, and to an adjourned court, as part of that term."

In the state of *New-York,* (1 *John. Cas.* 33.) it would seem, that a report after the term when it was directed to be made, and without any enlargement of time, by the court, would be deemed irregular. Here, however, application to enlarge the time, was made, and granted by the court, and the report

finally made within the enlarged time. Besides, it appears probable from the report of this case, in *New-York*, that the time was originally limited in the rule, by the parties themselves, and not appointed by the court alone ; in which case, it may be deemed an original condition attached to the submission, by the parties themselves, and have the same effect, as though the submission had been solely by the parties, without any rule of court ; in which case, we have seen, that an award after the time limited would be void.

*Fairfield*,
June,
1820.

Hall
*v.*
Hall.

It is said, that the law may be as I have claimed ; still there has been a *practice* in *Connecticut* to have referees *re-appointed* at every succeeding term, until they make their report ; and that the common law, as found in *Great-Britian*, or in the other states, ought not to govern, in opposition to this practice. If such a practice has prevailed in *Connecticut*, I have no doubt it originated in the self-interest of the clerks, who receive additional fees for every re-appointment, rather than from any belief in the courts, that such re-appointments were necessary. The practice has passed *sub silentio*, and is, in my opinion, entitled to very little consideration. Long continued practice may sometimes remove doubts, and be evidence of what the law is. But this practice may have been introduced from great caution, as well as from *interested motives* ; and does not necessarily proceed on the idea that the court do not possess an inherent authority to enlarge the time. Besides, when it is admitted, that by law, such power is vested in the court, it would be a strange inconsistency to deny the exercise of it, on the ground of *practice*. The *law* ought to govern the *practice* ; but instead of this, by a perversion of principle, the *practice* is allowed to overturn the *law* ; and this, for the sake of renewing a litigation between these parties, which has been fairly settled, by Judges of their own choosing.

PETERS, J. was of the same opinion.

BRAINARD, J. was absent.

Judgment reversed.