### SILVER v. CONNECTICUT RIVER LUMBER CO.

### CONNECTICUT RIVER LUMBER CO. v. SILVER.

*(Circuit Court, D. Vermont. October 22, 1889.)*

1. ARBITRATION AND AWARD—MISCONDUCT OF ARBITRATORS.
   The facts that one arbitrator unconsciously permits his jealousy of the other, who had often been selected as arbitrator in similar causes, to slightly warp his judgment against the selector of the other arbitrator, and that the other, from lack of independence, adjusts his judgment to balance that supposed leaning, do not vitiate the result honestly reached by them.

2. SAME.
   That the arbitrator selected by defendant in choosing a third consults with defendant with the concurrence of the other arbitrator, and without objection from the orator, is not a vitiating irregularity, where the result is the selection of one satisfactory to all.

3. SAME—MISTAKE IN FACTS.
   In an action to set aside an award of $1,000 as damages to premises by floating logs, it appeared that a substantial part of the damages allowed was for the breaking of the bank of the river where it was supposed not to have been broken before. From facts not then available it appeared that the bank had been broken before. The master found that the actual damages were not above $600. The amount allowed by the arbitrators for the broken bank was not ascertainable. *Held,* that the defendant might elect to remit $400, and, upon failure to so remit, that the award should be set aside.

At Law. Action by William R. Silver against the Connecticut River Lumber Company, to enforce an award, and suit in equity by the Connecticut River Lumber Company against Silver, to set aside the award.

*Henry C. Ide* and *Edgar Aldrich,* for the lumber company.

*Fletcher Ladd* and *William Heywood,* for Silver.

WHEELER, J. This action at law is brought upon an award by arbitrators for damage done to lands of the plaintiff by logs of the defendant floating in Connecticut river. The amount of the damages, and not the

liability, was submitted, but the parties, by the terms of submission, agreed to perform the award. The defendant insists that no liability follows damages so done; and that, as none was awarded or submitted, no right of recovery arises from the award. The river is navigable for such purposes, and as such is a highway common to all, and ordinarily no right to recover for damages done by logs floating upon it and carried by the elements would probably exist. Gould, Waters, §§ 90, 98; *Thompson* v. *Improvement Co.*, 54 N. H. 545; *Carter* v. *Thurston*, 58 N. H. 108. But the logs might be put, or be left to be taken, into the river in such large numbers at a time as to be dangerous to the shores of the river and lands adjacent; and that negligence towards, and disregard of, the rights of the riparian proprietors might create a liability to them for damage done in consequence. *Bail* v. *Herbert*, 3 Term R. 253; *Haines* v. *Welch*, 14 Or. 319, 12 Pac. Rep. 502. Whether such negligence caused or contributed to this damage is not found, and is not material. The defendant's officers and agents chose to waive all question about that, and contest the claim of the plaintiff in respect to amount only; and the award, if good, would make the obligation to perform it by paying the amount awarded, complete.

This suit in equity is brought to set aside the award for partiality and misconduct of one of the arbitrators, for fraud of the plaintiff in the action upon the award, and for a mistake of all in making the award for too much. Both causes have been by stipulation of the parties sent to a referee and special master, who has found and reported the facts. The president of the orator chose one arbitrator, and the defendant in the equity case chose another, and, if these two did not agree, they were to choose a third. River farms in that region were exposed to and frequently suffered damage from floating logs. The arbitrator chosen for the orator was a hill farmer, who had at several times so been chosen and acted in that capacity, before. The one chosen by the defendant was a river farmer, who had experienced some such damage, but had made no claim for it, and who thought the remedy for such damage was not sufficiently speedy and certain. The president of the orator did not know his situation and views, but one of his employes who assisted him knew that this arbitrator was a river farmer. No objection was made on this account, and any bias he might have from this situation must be considered as waived. *Fox* v. *Hazelton*, 10 Pick. 275. As the amount of the damage, and not the question of liability, was what was submitted, his views of what the law of the subject was or ought to be would be immaterial. He was a little jealous of the other arbitrator, because of his being chosen by the orator, and of his former acting as such. The master finds that honestly and without conscious purpose he suffered these things to, and they did, a little warp and bias his judgment in favor of the defendant against the orator, and make his estimate of damage higher. The principal of these things appears to have been the attitude of the other arbitrator. This arose upon the occasion, and was not inherent. From lack of independence and strength his judgment appears to have become adjusted to balance the supposed leaning of that other arbitrator.

The views, opinions, and inclinations of triers, as they arise in the course of proceedings before them in respect to the various phases of the subject and positions of one another, ought not to disturb the result honestly reached by them. The strength of minds, and their capacity for dealing with conflicting claims and interests, are much' diversified, and triers cannot be selected with any certainty as to course of reasoning to be adopted or result to be reached. Arbitrators are judges chosen by the parties for themselves; and, when so chosen, they must be taken as they are, with their weaknesses and frailties, of which all have some; and while they act honestly and fairly, according to such abilities as they have, with reference to what is submitted to them, their proceedings are valid and binding. Bac. Abr. "Arbitrament and Award;" *Van Cortlandt* v. *Underhill*, 2 Johns. Ch. 339; *Davy* v. *Faw*, 7 Cranch, 175. In choosing the third arbitrator he consulted the defendant with the concurrence of the other arbitrator, and without objection from those acting for the orator; more, apparently, to avoid objectionable men than to give the defendant his choice. The result of the consultation was favorable to a choice by the arbitrators themselves, and not by the defendant, and one satisfactory to all was selected. Here is no vitiating misconduct or irregularity. Nothing about the arbitrator in question, according to the standard indicated, or about the proceedings, when given the latitude which necessarily belongs to such tribunals, appears to be adequate to disturb this award. *Water-Power Co.* v. *Gray*, 6 Metc. 131; *Morville* v. *Society*, 123 Mass. 129.

A substantial part of the damages claimed and allowed was for the breaking of the bank of the river by these logs where it was supposed not to have been broken before. The question whether it had been broken before, or was broken by these logs, appears to have been fairly presented and tried, upon such proofs as were at hand, and such appearances as were visible. The master finds, from clear proof not then available, that the bank had been broken at that place before. So much of the damages as was allowed for that was for what did not exist, and should not, and would not, have been allowed for, if that fact had then been known. The amount of the damages allowed for this is not ascertainable. The master has found the actual damage not to be above $600. The arbitrators might have awarded more than that without including this supposed break, and they might have awarded less. What amount they would have awarded if that had been excluded is also uncertain. If a new trial could be had, that might be proper; but there is no mode of obtaining one. To wholly set aside the award for this cause would be harsh, and does not appear to be absolutely necessary. The orator, in asking equity, should be willing to do equity by paying the amount of actual damages, according to the finding of the master in the proceeding which he has invoked. No injustice to the orator is apparent from compelling payment of that. The defendant may prefer to remit the excess to having the award set aside. If so, that opportunity can be afforded in analogy to allowing a *remittitur* of damages to avoid the granting of a new trial because they are excessive. *Moore* v. *Luckess*, 23 Grat.

160; *Overby* v. *Thrasher*, 47 Ga. 10; *Rank* v. *Rank*, 13 Atl. Rep. 829. To allow the plaintiff in the action at law to remit $400 and retain the right to the balance of the award seems to be just and proper in these cases. As neither party was in fault about this mistake, the decree should be without costs. Let a decree be entered that the plaintiff in the suit at law, at his election, within 30 days, remit all but $600 of the award, and take judgment on the report for that sum, with interest and cost; and that on failure to so elect the award be set aside, and judgment be entered in the action at law for defendant.