ROBERT M. MORVILLE *vs.* AMERICAN TRACT SOCIETY.

Suffolk.    March 6, 7. — Sept. 7, 1877.    ENDICOTT & SOULE, JJ., absent.

A corporation chartered for the purpose of publishing pious and useful books and tracts for distribution among the ignorant and destitute, with power to sue and be sued, to appear in court to prosecute and defend to final judgment and execution, to take, possess and apply to the purposes of the corporation any moneys which may be given for immediate use, to hold as a permanent fund any estate, whether real or personal, the yearly income of which shall not exceed fifteen hundred dollars, the same to be faithfully appropriated to the object aforesaid, and not otherwise, may, if its income from the permanent fund does not exceed that amount, receive a sum of money on the condition that it will return it, if an additional amount is not raised within a certain time ; and, if a demand is made for the return of the money, on the ground that the condition has not been complied with, may submit the demand to arbitration under the Gen. Sts. *c.* 147.

If a corporation, in excess of the powers conferred by its charter, receives a sum of money on condition that it will return it, if an additional sum is not raised within a given time, and the condition is broken, an action may be maintained against the corporation on an implied promise to return the money, and a demand for its return may be submitted to arbitration.

On the issue whether a corporation, which had received a sum of money on certain conditions, was induced, on an alleged failure to perform the conditions, to enter into an agreement of submission to arbitration by the concealment of material facts, evidence that authority was given by the other party to its treasurer to appropriate a part of the money for another purpose ; that the corporation itself at the hearing before the arbitrators proved such appropriation by its treasurer ; and that the arbitrators allowed the sum so appropriated in reduction of the sum received by the corporation, is insufficient, and is no evidence of a waiver of the conditions upon which the corporation held the balance of the money.

Objections that an award exceeds the submission, and that the claim submitted has been materially altered in its terms, are not sustained by evidence, the only effect of which is to reduce the claim and not to change its character.

An exception cannot be sustained to the exclusion of evidence which is not reported or stated in the bill of exceptions.

At a hearing upon a motion to accept an award of three arbitrators in favor of A. against a corporation, it was objected that one of the arbitrators was improperly influenced by A., and the judge, before whom A. and the arbitrator appeared as witnesses, found as facts that they were familiarly acquainted ; that before the submission to arbitration A. had honestly stated the principal facts in the case to him ; and that upon these facts the arbitrator had expressed the opinion that no commercial house could stand upon the transaction ; and ordered judgment on the award. *Held,* that no error in law appeared.

MOTION in the Superior Court to accept an award of three arbitrators upon a submission, entered into before a justice of the peace under the Gen. Sts. *c.* 147, § 1, of the following de-

mand: " The right of R. W. Morville to recover from the American Tract Society the sum of $5000 alleged to have been given in the month of March 1869, by said Morville (under the assumed name of ' Union ') to said society, and by said society to have been received and accepted upon certain conditions, to be by said society performed, which it is alleged have not been fulfilled, and for breach of which said sum is claimed with interest."

The award of the arbitrators, signed by all of them, after stating that the parties appeared before them, presented their evidence, and were heard by counsel, proceeded as follows: " Whereupon the undersigned considered the matter, and do now determine and award that the said Robert W. Morville shall receive and recover from the said American Tract Society the sum of $4,600, which shall be in full for all claim for principal and interest upon the said demand submitted to us; and we do further award that the costs of this arbitration shall be paid by the said American Tract Society, which costs we do assess and tax at the sum of $200."

The arbitrators annexed to the award the following writing as the foundation of the claim submitted to them :

" Boston, March 15, 1869.   $5000.   The American Tract Society acknowledge the receipt of five thousand dollars from a friend, under the name of Union, to whom the same shall be repaid, in case the society is not allowed to retain its catholic condition, and unless fifty thousand dollars be raised for evangelization purposes.   Julius A. Palmer, Treas., by J. Wyeth Coolidge, Ass't Treas'r."

On this paper was the following indorsement : " Boston, May 20, 1870.   It has been observed by the donor that the term of five years, in which the sum of $50,000 was to be raised, was not specified in the receipt, and he requests me to state that that was the understanding, which I hereby do state and acknowledge.

" J. Wyeth Coolidge."

The defendant objected to the acceptance of the award, on various grounds, the following being those relied upon at the argument:

" 1. That it was not competent for the defendant to submit the demand to arbitration.

" 2. That it was not competent for the defendant to make the contract.

" 3. Because the defendant was induced to enter into the agreement to arbitrate by the concealment on the part of the plaintiff of material facts known to him and unknown to the defendant ; that the plaintiff had, by authorizing and assenting to the misappropriation of the whole of said $5000 to the constitution of life members of said society, waived all conditions and made the gift absolute.

" 4. Because the award considered and decided demands not included in the submission, to wit, what sum of money was due from said plaintiff to said society on account of life members of said society constituted by his authority and at his request.

" 5. Because the award is not certain and final upon all the demands considered by the arbitrators.

" 6. Because the claim in evidence, submitted by the plaintiff, was at his request, without the knowledge or authority of the defendant, materially altered in its terms, and was therefore null and void.

" 7. Because the plaintiff, without the knowledge of the defendant, communicated, advised and consulted with one of the arbitrators, while the cause was under consideration, in relation to the case, and in relation to facts material to the decision thereof.

" 8. Because the award was and is so grossly erroneous and unjust, and so utterly unwarranted by and contrary to the evidence offered, as to constitute misconduct on the part of the arbitrators, for which the award ought to be set aside.

" 9. That one of the arbitrators had formed and expressed an opinion upon the matters to be submitted, in favor of the plaintiff, on an *ex parte* statement of the facts by the plaintiff to him before he was appointed as arbitrator, which fact was not known to the defendant."

Hearing before *Brigham*, C. J., who allowed a bill of exceptions in substance as follows :

The defendant, for the purpose of supporting the 8th objection, offered all the evidence heard by the arbitrators. This evidence was ruled to be incompetent, and rejected.

For the purpose of supporting the 3d and 4th objections, **the** defendant offered evidence that the plaintiff, three or four months after the contract annexed to the submission, orally consented with the defendant's treasurer that the $5,000 referred to in said contract might be appropriated to constitute certain persons, designated by the plaintiff, life members of the defendant society, and that, under this consent, $600 of said $5000 was thus appropriated ; that the plaintiff had, and the defendant, excepting by its treasurer exclusively, had not knowledge of · such consent and appropriation when the submission was made ; that during such arbitration, upon the discovery of such agreement and appropriation, upon the defendant's petition and without objection by the parties, the arbitrators received evidence, heard the parties upon the matter of said consent and appropriation, and considered the same and allowed to the defendant in said award, and in reduction of said sum of $5000, the sum of $600 thus appropriated. The judge ruled that the evidence thus offered was not competent for the purpose of avoiding the award, and that it did not support any of the objections made thereto by the defendant, and rejected the evidence.

In support of the 8th and 9th objections, the judge, without objection by the parties, heard the testimony of the plaintiff, called by the defendant, and of one of the arbitrators, Samuel T. Snow, called by the plaintiff, and upon their testimony found the following facts :

The plaintiff, after demanding of the defendant's treasurer, Gilman, the repayment to him of the said sum of $5000, communicated to Snow in the course of several conversations — they being familiar acquaintances and frequent visitors at the houses of each other — all the principal facts of the transaction between the plaintiff and the defendant, which subsequently became the matters of the arbitration and award ; and Snow formed and expressed an opinion upon such facts, to the effect that no commercial house in State Street could stand upon such a transaction as that of the American Tract Society ; and, in the course of such conversations, advised the plaintiff, in consideration of his age, and to avoid the vexation of a lawsuit, to submit the said matter between him and the defendant to arbitrators ; and subsequently, by request of the plaintiff, gave his consent to **the**

plaintiff to be one of the arbitrators of said matter. After Snow's consent thus to act, the plaintiff on several occasions, at Snow's place of business, began to talk with Snow upon the matter of the arbitration, but Snow, without absolutely refusing to hear the plaintiff, and without hearing any details of the matter, advised the plaintiff to make no statements to him, but to reserve them until the hearing before the arbitrators; and after the first meeting of the arbitrators (when there was no hearing) the plaintiff retained counsel, and, after that retainer, Snow, when the plaintiff proposed to talk with him in the matter in arbitration, advised him to go to his counsel. The plaintiff, without any declaration or assurance or ground of expectation to that effect from Snow, except such as may appear in these facts found, relied upon Snow to look out for his interest in the matter of the arbitration. There was no evidence that the defendant before the award had notice of these facts in relation to Snow, and the judge found that it had no such notice. No other facts or evidence appeared at the hearing upon the motion for judgment upon said award, affecting the impartiality or conduct of said Snow as an arbitrator in the matter of said award, excepting the evidence and facts stated. In relation to the other arbitrators, there was no evidence affecting their impartiality or conduct as arbitrators in the matter of said award.

The foregoing is a statement of all the evidence in relation to said submission, arbitration, hearing or award offered, and of all the facts found or of which there was any evidence in the Superior Court, in addition to the original submission and award and papers annexed thereto. Upon the subject of the indorsement upon the defendant's contract no evidence was offered by either party or in relation to the number or names of the persons designated to be or constituted life members.

Judgment was ordered for the plaintiff upon the award; and the defendant alleged exceptions.

*J. W. May,* for the defendant. As to the 1st and 2d objections: Under the provisions of its charter the defendant had no power to take money except for immediate use, in pursuance of the general purposes of the society, or to constitute a fund, the yearly income of which would not exceed fifteen hundred dollars. Sts. 1816 *c.* 72, § 1; 1823, *c.* 49. *Balfour* v. *Ernest,* 5

C. B. (N. S.) 601. *East Anglian Railways* v. *Eastern Counties Railway*, 11 C. B. 775. *In re National Permanent Benefit Building Society*, L. R. 5 Ch. 309. *Hood* v. *New York & New Haven Railroad*, 22 Conn. 502. *Pearce* v. *Madison Railroad*, 21 How. 441. *Police Jury* v. *Britton*, 15 Wall. 566. *Whitwell* v. *Pulaski Co.* 2 Dillon, 249. *Andrews* v. *Union Ins. Co.* 37 Maine, 256. *Proprietors of Locks & Canals* v. *Nashua & Lowell Railroad*, 104 Mass. 1. *Wiley* v. *Bank of Brattleboro*, 47 Vt. 546. *Fowler* v. *Scully*, 72 Penn. St. 456. *Matthews* v. *Skinker*, 62 Misso. 329. *Weckler* v. *Bank of Hagerstown*, 42 Md. 581. And, as the contract is upon its face in excess of the power conferred by its charter upon the society, the holder takes it with notice, and cannot recover.

The evidence offered in support of the 3d objection was competent. *Van Cortlandt* v. *Underhill*, 17 Johns. 405.

As to the 4th and 5th objections : The only demand submitted was the right of the plaintiff to recover from the society the sum of $5000, alleged to have been given and accepted upon certain conditions, to be by the society performed, which it was alleged had not been fulfilled. If the misappropriation, proved for the purpose of showing that the plaintiff had waived the alleged conditions upon which the gift was made, could be considered in the nature of a claim in set-off, then the arbitrators should have found and stated the amount of the claim.

As to the 6th objection : Any alteration affecting the time when a note becomes payable vitiates the contract. *Homer* v. *Wallis*, 11 Mass. 309. *Davis* v. *Jenney*, 1 Met. 221. *Ives* v. *Farmers' Bank*, 2 Allen, 236.

As to the 7th objection : Any communication made by one party to a submission, without the knowledge of the other, while the arbitrators have the cause under consideration, attempting to influence them in his own favor, or to prejudice them against the other party, will avoid the award, if seasonably objected to by the latter ; because the court cannot know that it did not affect the minds of the arbitrators, and must protect the innocent party from the possibility of being injured by the unlawful attempts of the other party. *Johnson* v. *Holyoke Water Power Co.* 107 Mass. 472. To receive any *ex parte* communication from either of the parties to the controversy during the arbitration is

misbehavior on the part of the arbitrator which will invalidate the award. *Strong* v. *Strong*, 9 Cush. 560, 570. *Walker* v. *Frobisher*, 6 Ves. 70. *Fetherstone* v. *Cooper*, 9 Ves. 67.

As to the 8th objection: The court is bound to hear any competent evidence which tends to prove the allegation. *Hutchinson* v. *Shepperton*, 13 Q. B. 955. *Burton* v. *Knight*, 2 Vern. 514. *Tracy* v. *Herrick*, 5 Foster, 381.

As to the 9th objection: An award is rightly rejected if, previously to the selection of the arbitrators, one of them made an *ex parte* examination of the matter afterwards submitted, at the request of one of the parties, to whom the substance of the result at which they arrived was known, and these facts were not communicated to the other party. *Conrad* v. *Massasoit Ins. Co.* 4 Allen, 20. In the case at bar, the facts found are, that, before the selection of the arbitrator, the plaintiff, in the course of several conversations, communicated to Snow all the principal facts of the transaction between the plaintiff and the defendant which subsequently became the matter of the arbitration and award, and that Snow formed and expressed an opinion upon such facts, to the effect that no commercial house in State Street could stand upon such a transaction as that of the American Tract Society; that the plaintiff relied upon Snow to look out for his interests in the matter of the arbitration, and that the defendant had no notice of that fact. See *Perry* v. *Moore*, 2 E. D. Smith, 32; and cases cited above, in support of the 7th objection.

*H. D. Hyde*, for the plaintiff.

COLT, J. The plaintiff paid five thousand dollars to the American Tract Society, under an agreement with the treasurer of that society that it should be repaid to him in case the society should not be allowed to retain its catholic condition, and unless fifty thousand dollars be raised within five years for evangelization purposes. A receipt for the money, signed by the treasurer, and reciting that agreement, was given to the plaintiff. There was a failure of one of the conditions named, but the society refused to pay the money back to the plaintiff.

The right of the plaintiff to recover the money so given was submitted by the parties to three arbitrators, by a submission entered into before a justice of the peace under the Gen. Sts.

c. 147. An award in favor of the plaintiff was duly returned to the Superior Court, and many objections were there made by the defendant to its acceptance. It is necessary to consider only those which were relied on at the argument.

1. The defendant insisted that the contract made with the plaintiff and the submission to arbitration of the claims arising under it, were not within the chartered powers of the society. The act of incorporation provides that the persons therein named shall be a body politic, " for the purpose of publishing pious and useful books and tracts for distribution among the ignorant and destitute ; " with power to " sue and be sued, plead and be impleaded, appear in court, defend and prosecute to final judgment and execution ; " and " take, possess and apply, to the purposes of said corporation, any moneys which may be given for immediate use; and may hold, as a permanent fund, any estate, whether real or personal, the yearly income of which shall not exceed fifteen hundred dollars, and the same shall be faithfully appropriated to the object aforesaid, and not otherwise." St. 1816, c. 72, § 1. Under these provisions, it is contended that the society had no power to take money which was not given for immediate use, and to agree to repay the same if certain conditions were not complied with.

The power to make all such contracts as are necessary and usual in the course of business, or are reasonably incident to the objects for which a private corporation is created, is always implied, where there is no positive restriction in the charter. Thus it is not necessary that there should be express authority to borrow money, or to make negotiable paper, if such is the usual and proper means of accomplishing that object. It is the purpose of the charter of the defendant to create a corporation with power to receive and expend for the purposes named all money given for immediate use. If this was all, there would be strength in the position that the power to receive and hold money to any considerable amount or for any great length of time, on deposit, or in trust for any purpose, was not conferred by the charter. But there is another clause which gives the right to hold real and personal estate for the purpose of securing a limited annual income to be appropriated to the objects of the society. Under this provision we think this contract can be supported.

It must be treated as valid, unless it appears affirmatively to be a contract to do something which is beyond the reasonable exercise of the power granted. We cannot say as matter of law that the right given to a corporation to take and hold property for the purpose of securing a specified yearly income does not imply the right to receive money within the limits named, upon giving an agreement to return it upon conditions which are not illegal and do not violate its charter, and under which the income of the money is secured to the corporation, so long as the right to hold the fund so obtained continues. To hold otherwise would be to declare void many conditional gifts to charitable and educational institutions. It is enough that an award by arbitrators, having full power to settle the facts as well as the law between the parties, cannot be set aside because the defendant is held responsible on such a contract.

There is another answer to this objection which is equally satisfactory. The question is upon the acceptance of the award; no question of pleading is involved. The award is binding, if in any form of action the plaintiff is entitled to recover. If the defendant were to be allowed the full benefit of the point made, the plaintiff could only be prevented from enforcing his express contract. The money of the plaintiff was taken and is still held by the defendant under an agreement which it is contended it had no power to make, and which, if it had power to make, it has wholly failed on its part to perform. It was money of the plaintiff, now in the possession of the defendant, which in equity and good conscience it ought now to pay over, and which may be recovered in an action for money had and received. The illegality is not that which arises when the contract is in violation of public policy or of sound morals, and under which the law will give no aid to either party. The plaintiff himself is chargeable with no illegal act, and the corporation is the only one at fault in exceeding its corporate powers by making the express contract. The plaintiff is not seeking to enforce that contract, but only to recover his own money and prevent the defendant from unjustly retaining the benefit of its own illegal act. He is doing nothing which must be regarded as a necessary affirmance of an illegal act.

The right to recover the money upon the implied promise, under like circumstances, has been heretofore recognized by this court.

In *White* v. *Franklin Bank*, 22 Pick. 181, where an express contract was made by a bank for the payment of a deposit at a future day certain, against the prohibition of the Rev. Sts. *c.* 36, § 57, it was held that, while no action could be maintained by the depositor upon the express contract, yet he might recover back the money, without a previous demand, in an action commenced before the expiration of the time, the parties not being *in pari delicto*, and the action being in disaffirmance of the illegal contract. The general proposition, that where money is paid on a contract which is merely prohibited by statute, and the receiver is the principal offender, it may be recovered back, was laid down in that case by Wilde, J., who declared it to be, not only consonant with principles of sound policy and justice, but to have been now settled by authority, whatever doubt may have been formerly entertained. " To decide," he adds, " that this action cannot be maintained, would be to secure to the defendants the fruits of an illegal transaction, and would operate as a temptation to all banks to violate the statute, by taking advantage of the unwary, and of those who may have no actual knowledge of the existence of the prohibition."

Again, in *Dill* v. *Wareham*, 7 Met. 438, where a town made a contract with reference to certain fisheries within its limits which it had no authority to make, and which it refused to perform, it was decided that the plaintiff might recover back money paid in advance on the contract, as money had and received by the town to his use.

The same principle is recognized in New York. *Utica Ins. Co.* v. *Scott*, 19 Johns. 1. *Utica Ins Co.* v. *Cadwell*, 3 Wend. 296. *Utica Ins. Co.* v. *Bloodgood*, 4 Wend. 652.

2. The evidence, offered in support of the objection that the defendant was induced to enter into the agreement of submission to arbitration by the concealment of material facts, fails to support that objection. The authority to appropriate part of the money to life memberships was given by the plaintiff to the defendant's treasurer. The defendant produced at the hearing before the arbitrators evidence of such payments by the treasurer,

and they were allowed by the arbitrators in reduction of the five thousand dollars claimed by the plaintiff. Nor can we see that the transaction can be regarded as any evidence of a waiver of the conditions upon which the balance of the money was held.

3. As to the objections that the award exceeded the submission, and that the claim submitted was materially altered in its terms, it is sufficient to say that the evidence relied on in support of them was submitted in defence at the hearing before the arbitrators, and had the effect only to reduce the plaintiff's claim, not to increase its amount or to change its character.

4. For the purpose of showing that the award was so grossly erroneous, unjust and unwarranted by, and contrary to, the evidence, as to constitute misconduct on the part of the arbitrators, the defendant offered evidence of all the evidence heard before the arbitrators. But this evidence thus offered is not reported in the bill of exceptions. We cannot, therefore, see that the defendant suffered any injury by its rejection, and need not consider the question whether, or how far, such evidence could under any circumstances be admitted.

5. The more important objection remains to be considered. It is alleged that the plaintiff, without the knowledge of the defendant, consulted and advised with one Snow, who was afterwards selected as one of the arbitrators, while the case was under consideration between the parties, in relation to facts material to the decision, and that Snow formed and expressed an opinion in favor of the plaintiff before he was appointed arbitrator.

At the hearing, upon the motion to accept the award, in the Superior Court, Snow and the plaintiff were both witnesses; the judge found upon the evidence certain facts reported in the bill of exceptions, and ordered judgment for the plaintiff. The question, therefore, is whether, upon these findings, that judgment is erroneous in law. We are of opinion that it is not. The question is mostly one of fact. The judgment must stand, unless, upon the facts found, the award was legally invalid.

It does not appear that after the submission, or after Snow had notice that he was wanted as an arbitrator, any *ex parte* communication was made by the plaintiff to him for the purpose of influencing him in the plaintiff's favor, or prejudicing him

against the other party. The facts found by the court, namely, that Snow and the plaintiff were familiarly acquainted and frequently visited each other's houses; that before the submission was entered into, the plaintiff had honestly stated the principal facts in the case to him; and that, upon these facts, Snow had expressed the opinion that no commercial house could stand upon such a transaction, do not compel us to the conclusion that he was, from undue bias and partiality, an unfit arbitrator upon the matter involved in the controversy. The proposition stated by him is one with reference to which few men, upon the facts in this case, would differ. The main question was as to the liability under this contract of a corporation possessed only of limited powers. The opinion that an individual or a mercantile firm with different or unlimited powers could not escape liability does not prove that Snow had so far prejudged the defendant's case as to disqualify him as an arbitrator. There is nothing to show that he acted as, or understood that he was, the agent of the plaintiff after or before he became arbitrator. His fitness is not impaired by the fact that the plaintiff admitted that he relied on him to look out for his interest. There does not appear on the part of either any fraud, collusion, false statement or perversion of the facts in the case.

It is to be considered that this was a submission under the statute by which the award of a majority is made binding; that it is not uncommon in such cases for each party to choose a neighbor and friend who is understood to have some previous knowledge of the matter in dispute, while the third man is chosen by the other two, or mutually agreed upon by the parties. There is nothing to show that these were not so chosen. Arbitrators, not avowedly selected as partisans, are indeed bound, as in the execution of a joint trust, to look impartially at the true merits of the matter submitted to their judgment; but under the circumstances here indicated, the mere previous intimacy of the parties is of little weight without some proof of misbehavior while the cause is actually pending. But, above all, it is to be considered that the judge saw as witnesses the parties charged with improper conduct; that they were the only witnesses in support of the charge; and that he had full opportunity to judge of their honesty and fairness, the age and intel-

lectual ability of each, and the probability that one was improperly swayed in the discharge of his duty by the other.

We cannot decide, as matter of law, that he was not justified in finding as a fact that the plaintiff was not chargeable with improper conduct such as would avoid the award, and that the arbitrator was not unfitted to serve by previous prejudice and bias. *Strong* v. *Strong*, 9 Cush. 560, and 12 Cush. 135. *Fox* v. *Hazelton*, 10 Pick. 275. *Conrad* v. *Massasoit Ins. Co.* 4 Allen, 20. *Johnson* v. *Holyoke Water Power Co.* 107 Mass. 472.

*Exceptions overruled.*