Robert L. Chesnutt and Flay L. Murphy, Appellants, v. Joseph H. Schwartz et al., Appellees.

Gen. No. 39,605.

Opinion filed January 31, 1938. Rehearing denied February 14, 1938.

THOMAS D. HUFF, of Chicago, for appellants; HERBERT A. HUFF, THOMAS M. BARGER, JR., and W. H. THOMAS, all of Chicago, of counsel.

HIRSCH E. SOBLE, of Chicago, for appellees; NORMAN H. NACHMAN, of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

On November 16, 1936, the plaintiffs, Chesnutt and Murphy, who are certified public accountants, sued the defendants, Joseph and Allen Schwartz and Edward A. Cooper, who are attorneys at law. Plaintiffs filed their complaint consisting of 18 paragraphs, setting up facts by reason of which they claimed defendants

owed them $2,391.42, the reasonable value of services rendered by plaintiffs as accountants at the request of defendants. An itemized statement was attached to the complaint and marked Exhibit "A." January 8, 1937, defendants filed a motion to dismiss the suit for reasons as stated:

"1. That it appears on the face of the complaint that the alleged cause of action did not accrue within the time limited by law for the commencement of an action or suit thereon.

"2. That it appears on the face of the complaint that the alleged claim on which the action is founded is unenforceable under the provisions of the Statute of Frauds.

"3. That it appears on the face of the complaint that the facts set forth in said complaint do not constitute any cause of action whatever against these Defendants."

April 20, 1937, this motion was allowed. The plaintiffs elected to stand on their complaint as amended and the court entered judgment for the defendants, from which the plaintiffs have appealed.

From their reasons as stated, it is apparent that the motion of defendants was based upon two sections of the Civil Practice Act: First, sec. 45, Ill. Rev. Stat. 1937, ch. 110, § 169, p. 2395; Jones Ill. Stats. Ann. 104.045, and sec. 48, § 172, p. 2397; Jones Ill. Stats. Ann. 104.048. Section 45 in substance provides that all objections to pleadings theretofore raised by demurrer shall thereafter be raised by motion, and that such motions shall point out specifically the defects complained of and shall ask for such relief as the nature of the defects may make appropriate. Section 48 provides for motions to dismiss for defects which may appear on the face of the complaint, or where the same do not appear upon the face of the complaint, the motion may be supported by affidavits. Paragraph

(f) designates the statute of limitations and (h) the statute of frauds as ground for such a motion.

The complaint in substance averred that plaintiffs were certified public accountants; that defendants were practicing lawyers in the city of Chicago during 1930; that on October 21, 1929, a corporation known as the Liberty Supply and Lumber Company was adjudicated bankrupt in the United States District Court and was in the process of settlement before the referee in bankruptcy; that on November 26, 1929, E. H. Johnson was appointed trustee in bankruptcy of the corporation, duly qualified and continued to act as such trustee during the years 1930, 1931 and 1932; that defendants were appointed attorneys for said trustee; that on July 29, 1930, upon application of the trustee, the referee directed him to employ plaintiffs as accountants to aid the trustee and his attorneys with reference to objections of the trustee to the claim of the United States collector of internal revenue against the bankrupt; that on November 26, 1929, Catherine Hepp, wife of J. G. Hepp, president of the bankrupt corporation, filed a claim against the bankrupt for $95,452.18, for money alleged to have been lent to the corporation by her; that on June 30, 1930, the trustee, through defendants as his attorneys, filed an objection to the allowance and payment of the claim, and in August, 1930, for the purpose of inducing plaintiffs to undertake work thereafter referred to, the defendants, as attorneys for the trustee, ''orally agreed with the plaintiffs that if the said plaintiffs would undertake the employment of making an examination and audit of the books, audits, inventories and records of the said bankrupt company for the purpose of assisting in the defense to the claim of the said Catherine Hepp, and would assist in the preparation of the trustee's defense to said claim of the said Catherine Hepp against said bankrupt estate, and would assist on behalf of the

defense in the trial of said claim before the referee in bankruptcy, then the said defendants, as such attorneys for said trustee, would file the claim of said plaintiffs for the reasonable value of such services in the court of the referee in bankruptcy and would submit same to the said referee's court for allowance and have the same allowed at the same time that the final claim of defendants, as attorneys for said trustees in bankruptcy was filed in said bankruptcy court and would have the claim of plaintiffs for such services rendered, allowed and paid.'' The complaint also avers that at the time mentioned defendants stated to plaintiffs that on account of the fact that an order had been previously made employing plaintiffs to aid the trustee with reference to the claim of the United States collector of internal revenue it would be unnecessary to secure an additional order of the referee in bankruptcy empowering the trustee to employ plaintiffs in connection with the claim of Catherine Hepp. Pursuant to the agreement and in compliance with it plaintiffs undertook the work and performed the services, prepared the necessary data, information, etc., to resist the allowance and payment of the claim of Catherine Hepp, and assisted in the trial of it by testifying and otherwise; that as a result of their efforts the claim of Catherine Hepp was reduced from $95,452.18 to $50,000, and reduced from the status of a preferred to that of a general claim, and on June 27, 1932, was allowed as a general claim for only $50,000; that the work, labor and services contributed by plaintiffs and their employees in compliance with the agreement, at divers times between the 11th of August, 1930, and the 14th of November, 1931, in and about the examination of the books, audits, inventories, etc., relative to the objections of the trustee to the claim of Catherine Hepp and in assisting in the preparation of the defense of the trustee to said claim, and assisting in the

trial are as set forth in Exhibit "A," which contains the nature of the services rendered, the dates and times thereof and the reasonable value of the same, which is stated to be $2,391.42.

The complaint further avers that on August 29, 1932, the final payment of fees to defendants as attorneys for the trustee was ordered by the referee, and the final fee paid to them by the trustee; that the final meeting of the creditors was held August 29, 1932, and final distribution of funds belonging to the estate was made by the trustee, and Johnson, as such trustee, was discharged from further liability on January 30, 1933; that in breach of their agreement with plaintiffs, defendants wilfully failed and refused to carry out their said agreement; that they filed their own claim with the referee and had it allowed on August 29, 1932, and wilfully failed and refused to file and have allowed the claim of plaintiffs, and failed and refused to have any sum allowed to plaintiffs for such services. Defendants did not inform or apprise plaintiffs that the claim of plaintiffs for such services had not been filed, and that they failed to have it allowed and paid, or that the final meeting of the creditors was about to be held and the estate closed. As a result the claim of plaintiffs was not filed or allowed or paid in accordance with the agreement between plaintiffs and defendants; that the assets of the bankrupt corporation were sufficient so that if plaintiffs' claim had been filed and allowed as agreed, it would have been paid and satisfied out of said assets; that if it had been filed it would have been allowed and paid in its entirety; that by reason of the breach in the contract between plaintiffs and defendants, plaintiffs sustained damages in the sum of $2,391.42. Plaintiffs were not advised by defendants that their claim against the bankrupt estate had not and would not be filed and allowed by them prior to the final closing of the estate and the

final distribution of the assets, and at no time were they advised by defendants that the time had arrived for the filing of and allowance of their claim, and that they had no knowledge that the estate had been finally settled and closed until after it had been accomplished. It was then too late to file their claim in the bankruptcy court. Plaintiffs demanded judgment for $2,-391.42 with interest at the rate of 5 per cent per annum from August 21, 1932.

Plaintiffs argue for reversal that the motion to dismiss was wholly insufficient because it did not point out specifically the defects complained of. It is not necessary to discuss this point by reason of the fact that defendants in their brief rest their case solely (not upon any ground stated in their motion) but upon a ground (which they insist it is the duty of this court on its own motion to raise, although it is not suggested anywhere in the trial record, namely, that the contract set up in the complaint is null and void as against public policy, because of its tendency to interfere with the impartial administration of justice. On this question they say correctly that questions of pleading are immaterial and cite the Supreme Court of the U. S. General Orders in Bankruptcy, No. XLV, with certain decisions construing the same, and *Weil v. Neary,* 278 U. S. 160, 73 L. Ed. 243. General Order No. XLV is as follows: "No auctioneer or accountant shall be employed by a receiver or trustee except upon an order of the court expressly fixing the amount of the compensation or the rate or measure thereof."

We are not able to agree that the cause of action set up in the complaint is in contravention of this order. The order by its terms refers only to a receiver or trustee. Defendants are neither. It is not averred in the complaint that defendants made any agreement on behalf of the trustee or the bankruptcy court but on be-

half of themselves only. Defendants, who were attorneys at the bar, agreed, according to the complaint, to undertake to have the fees for plaintiffs allowed by the bankruptcy court. Notwithstanding the order we do not see anything inherently wrong or contrary to good morals or public policy in the agreement as alleged. Nor do we perceive wherein the agreement would have any tendency to interfere in any respect with the impartial administration of justice. On the contrary, all the facts set up in the complaint show that the agreement tended very much to promote the impartial administration of justice, in that as a result of it an unjust claim was defeated. The facts of the complaint admitted by the motion are that the services rendered by the plaintiffs were very beneficial to the estate in bankruptcy and to defendants themselves as attorneys for the trustee of the estate as well as to all the creditors. True, when defendants entered into the contract they took the risk of the claim being disallowed by the court. If they were unable to secure this allowance, they and they alone were responsible. If defendants desired to make the contract binding on the trustee they could have done so by securing an order of the court authorizing the employment. They did not do this. They gave their promise, but they failed to protect the rights of the plaintiffs as agreed. Moreover, as plaintiffs point out, defendants are hardly in a position to complain on the ground that the contract was contrary to public morals. Plaintiffs were accountants. Defendants were lawyers familiar with practice in bankruptcy cases and presumably familiar with the proceedings in bankruptcy courts. Under these circumstances it can hardly be claimed that plaintiffs (assuming the contract was contrary to public policy) were in *pari delicto* with defendants in reference thereto. The complaint alleges facts which show a

representation of these lawyer defendants that the agreement might lawfully be made. Hence, if the agreement was unlawful plaintiffs are not equally guilty with defendants. Under such circumstances plaintiffs would not be in *pari delicto*. *Vock v. Vock*, 365 Ill. 432, 435, 6 N. E. (2d) 843, 109 A. L. R. 1170. Again this contract (assuming it to be illegal) is at most *malum prohibitum* not *malum in se*. There was nothing wrong in the employment of accountants to assist counsel and the court. Indeed, the statute specifically authorizes such employment. It is claimed to be illegal only because the contract was not authorized in the manner prescribed by a rule of court. We think it can plausibly be argued that (the facts as set up in the complaint being presented to the court) the allowance would have been made notwithstanding the rule, to prevent the unjust enrichment of defendants and the estate through the appropriation of the services of plaintiffs. The rule is well stated in 13 C. J. 505, sec. 447: ''Another distinction is sometimes made in the case of contracts which are simply unauthorized, but involve no moral turpitude and are not expressly forbidden by statute, in which case it has been held that they may be enforced if justice plainly requires it. So where the contract is merely malum prohibitum and the illegality does not arise from any elements of moral turpitude a recovery may be had of money or property parted with thereunder.''

To the same effect are *Warnock v. Davis*, 104 U. S. 775; *Lester v. Howard Bank*, 33 Md. 558; *McRae v. Warmack*, 135 S. W. 807, 33 L. R..A. (N. S.) 949; *Herring v. Cumberland Lumber Co.*, 42 L. R. A. (N. S.) 64, 74 S. E. 1011; *Morville v. American Society*, 123 Mass. 129, 25 Am. Rep. 40; *Harris v. Runnels*, 53 U. S. 79, 84; *Atwater v. Sellers*, 239 N. W. 629; *Pyle v. Kernan*, 36 P. (2d) 580–583. Nor is the contention of defendants

sustained by *Weil v. Neary,* 278 U. S. 160. In that case a lawyer who was counsel for many of the creditors, representing more than 90 per cent of them, became counsel for the trustee and asked to have compensation for his services allowed, although he had become such counsel without the knowledge of the court. No argument is necessary to disclose the difference between an attorney representing two conflicting interests at the same time and the case of accountants who perform services for one party to whom they are loyal. The cases are entirely unlike.

The court erred in sustaining the motion and dismissing the suit, and for that error the judgment is reversed and the cause remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

O'Connor, P. J., and McSurely, J., concur.